IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| MARY B. PURKERSON,<br><br>    Plaintiff,<br><br>    v.<br><br>CREDIT PROS INTERNATIONAL CORPORATION,<br><br>    Defendant. | Civil Action No. 6:23-cv-00060-C |

**DEFENDANT CREDIT PROS INTERNATIONAL CORPORATION'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

Defendant Credit Pros International Corporation ("Credit Pros"), by and through the undersigned attorneys and pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), as well as Local Rules 7.1 and 7.2, hereby files this Motion to Dismiss the Complaint [Doc. No. 1] filed by Plaintiff, Mary B. Purkerson ("Plaintiff"). In support of its Motion to Dismiss, Credit Pros incorporates the below Memorandum of Law and states as follows:

**INTRODUCTION**

Plaintiff seeks to assert claims against Credit Pros that sound in fraud under the Credit Repair Organization Act, 15 U.S.C. § 1679 *et seq.* ("CROA"), the Texas Credit Services Organization Act ("TCSOA"), Texas Financial Code § 393.101 *et seq.* ("TCSOA"), and the Texas Consumer Debt Management Services Act, Texas Financial Code § 394.201 *et seq.* ("TCDMSA"). But to do so, as set forth in the Federal Rules of Civil Procedure, Plaintiff must allege such claims with particularity to safeguard Credit Pro's reputation from improvident charges of wrongdoing. Simply put, Plaintiff completely fails to allege her fraud-based claims with

particularity. Accordingly, Credit Pros respectfully requests that the Court enter an Order dismissing the fraud-based claims attempted to be asserted in Plaintiff's Complaint.

## MEMORANDUM OF LAW

### I. STATEMENT OF FACTS

On October 13, 2023, Plaintiff filed her Complaint against Credit Pros. While Credit Pro's alleged relationship with Plaintiff was contractual in nature (Compl. ¶ 13) and while Plaintiff's alleged actual damages are around $800 (Compl. ¶ 17), Plaintiff's Complaint seeks to assert claims pursuant to 15 U.S.C. § 1679b(a)(3)-(4) (Count I(a))[1] and Texas Finance Code § 393.304(1), § 393.305, § 394.207, and § 394.212 (Count II(a) and Count III(a)-(b)) and based on supposed promises, representations, guarantees, and advice of unknown Credit Pros representatives, allegedly uttered at unknown times and entirely devoid of context. Compl., ¶¶ 11-17, 19, 21-22, 32, 41, 46, 49. Plaintiff alleges the following guarantees and representations as follows:

10. Plaintiff was unsatisfied with the current standing of her consumer credit reports and began researching companies to help her improve her credit rating and increasing [sic] her odds of applying for credit in the future.

11. Plaintiff subsequently happened upon Defendant's services.

12. Moreover, Plaintiff reached out to inquire further about Defendant's services and what Defendant could promise her in return for her business.

13. After speaking with Defendant and getting an idea of its services, Plaintiff entered into a contract with Defendant for credit repair services given Defendant's promises that its program would be able to help Plaintiff resolve her debt and increase her credit score.

14. Relying upon Defendant's representations regarding the nature and efficacy of its services, Plaintiff began her monthly payments to Defendant.

---

[1] Count I purports to assert additional disparate CROA violations against Credit Pros predicated entirely on technical violations of CROA. *See* Count I(b) (predicated on 15 U.S.C. § 1679c. For the purposes of clarity only, this additional alleged CROA violation is not at issue in this Motion.

15. Specifically, Plaintiff was explicitly informed that if she made $149 monthly payments to Defendant over a period of time, Defendant would be able show results such as improving her credit rating, and resolve outstanding debts negatively reporting.

16. Moreover, Defendant also promised to provide Plaintiff legal counsel should any of her creditors take legal action against her while enrolled into Defendant's program.

17. Plaintiff proceeded to make her monthly payments to Defendant on a consistent and timely basis for nearly six months totaling over $800.

. . .

19. Defendant was unable to alleviate Plaintiff's concerns and failed to improve Plaintiff's credit rating despite taking payment from Plaintiff.

. . .

21. Unfortunately, despite Defendant's promise to provide Plaintiff with legal counsel in the event of a lawsuit, Defendant failed to keep its word.

22. Throughout their dealings, Defendant deceptively and misleadingly strung Plaintiff along, **telling her what she wanted to hear** in order for her to keep making payment, only to turn around and fail to deliver on the promises and representations that induced Plaintiff's continued participation in Defendant's credit repair services. [emphasis added]

. . .

30. At all revanant times, Defendant represented to Plaintiff, both directly and by implication, that successfully completing Defendant's program would, ultimately, result in the overall improvement of Plaintiff's credit history, at [sic] it would allow her to resolve obligations which otherwise would go unresolved.

. . .

32. Defendant violated [15 U.S.C. 1679(a)(3)-(4)] through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. In order to get Plaintiff to agree to utilize Defendant's services, Defendant represented that its services would result in an increase in her credit score, and resolve her debts; however, Defendant completely failed to follow through on these promises or the services it represented it would perform for Plaintiff.

33. In addition, Defendant failed to provide Plaintiff the promised legal counsel in her lawsuit against Midland Credit Management, Inc.

. . .

41. Defendant violated [Tex. Fin Code] §§ 393.304(1) & 393.305 in much the same way it violated [15 U.S.C. 1679(a)(3)-(4)].

. . .

46. Defendant violated [Tex. Fin Code] § 394.207 through its deceptive advertising directed towards Plaintiff regarding the nature of the services it would perform for Plaintiff. Defendant recommended that it would be able to achieve its results within a certain period of time despite knowing, or being substantially sure, that it would not be able to achieve the results within the timeframe represented. Upon information and belief, it is Defendant's business model to underinflate the amount and number of payments consumers must make to complete its program in order to get consumer's feet in the door, knowing that it will ultimately qualify its earlier representations as "estimates" when those representations prove false.

. . .

49. Defendant violated [Tex. Fin Code] § 394.212(a)(9) through the deceptive and unfair nature of the representations made to Plaintiff and manner in which its services were subsequently provided.

There are no pertinent allegations elaborating or otherwise providing specificity to those reflected above.

## II. STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *McReynolds v. Bell Textron, Inc.*, 4:22-CV-00194-O-BP, 2022 WL 2759848, at *1 (N.D. Tex. June 29, 2022); *Priester v. Long Beach Mortgage Co.*, 4:16-CV-449-ALM-KPJ, 2018 WL 1833255, at *3 (E.D. Tex. Jan. 23, 2018). In deciding such a motion, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his/her claims

that would entitle him to relief. *Collins v. Morgan Stabley Dean Witter*, 224 F. 3d 496, 498 (5th Cir. 2000); *Veloz v. Allstate Fire & Cas. Ins. Co.*, 5:20-CV-1438-DAE, 2021 WL 8443994, at *2 (W.D. Tex. Apr. 23, 2021). While liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Shaban v. United Fin. Cas. Co.*, 1:22-CV-00847-LY, 2023 WL 324518, at *2 (W.D. Tex. Jan. 18, 2023); *Pemberton v. PNC Bank Nat. Ass'n*, No. CIV.A H-12-756, 2012 WL 2122201, at *2 (S.D. Tex. June 11, 2012). To avoid dismissal under Rule 12(b)(6), the complaint must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some viable legal theory. *Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.,* 332 F.3d 6, 19 (1st Cir. 2003); *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 437 (6th Cir. 1988).

Federal Rule of Civil Procedure 9 provides, in pertinent part, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b)*.* This requirement is "supplemental" to the *Iqbal* pleading standards. *In re BP P.L.C. Sec. Litig.*, No. 412CV01256CONS, 2017 WL 7037706, at *4 (S.D. Tex. June 30, 2017). The Fifth Circuit interprets "particularity" as requiring plaintiffs to specify (1) the statements contended to be fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent." *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003); *see also Ricupito v. Indianapolis Life Ins. Co.*, 3:09-CV-2389-B, 2010 WL 3855293, at *6 (N.D. Tex. Sept. 30, 2010) (finding that the plaintiff failed to satisfy Rule 9(b)'s particularity requirement to plead who, what, when, how, and why); *McCutchen v. Rowhger Co. (A Tr.)*, 5:06-CV-00987-WWJ, 2008 WL 11417117, at *2 (W.D. Tex. Mar. 17, 2008) (same). Dismissal of a fraud claim for failure to plead with particularity

under Federal Rule of Civil Procedure 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6). *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

### III.   DISCUSSION

Plaintiff's fraud-based claims are predicated on 15 U.S.C. § 1679b(a)(3)-(4) and Texas Financial Code § 393.304(1), § 393.305, § 394.207, and § 394.212, which state, respectively:

> No person may make or use any **untrue or misleading representation** of the services of the credit repair organization.

15 U.S.C. § 1679b(a)(3) (emphasis added).

> No person may engage, directly or indirectly, in any act, practice or course of business that constitutes or results in the commission of, or an attempt to commit, a **fraud or deception** on any person in connection with the offer or sale of the services of the credit repair organization.

15 U.S.C. § 1679b(a)(4) (emphasis added).

> A credit services organization or a representative of the organization may not: (1) make or use a **false or misleading representation** in the offer or sale of the services of the organization, including: (A) guaranteeing to 'erase bad credit' or words to that effect unless the representation clearly disclosures this can be done only if the credit history is inaccurate or obsolete; and (B) guaranteeing an extension of consumer credit regardless of the person's credit history unless the presentation clearly discloses the eligibility requirements for obtaining the extension.

TEX. FIN CODE § 393.304(1) (emphasis added).

> A credit services organization or a representation of the organization may not directly or indirectly engage in a **fraudulent or deceptive act, practices, or course of business** relating to the offer or sale of the services of the organization.

TEX. FIN CODE § 393.305 (emphasis added).

> A provider may not engage in **false or deceptive advertising**.

TEX. FIN CODE § 394.207 (emphasis added).

> A provider may not: . . . (9) engage in an **unfair, deceptive, or unconscionable act or practice in connection with a service provided to a consumer**.

TEX. FIN CODE § 394.212 (emphasis added).

As noted by one court, the statute must not be read in a vacuum but rather in the context of the entire CROA, whose basis and intent is to regulate the credit repair industry. *Plattner v. Edge Solutions, Inc.,* 422 F. Supp. 969 (N.D. 111. 2006); *Miller v. Amusement Enterprises, Inc.,* 394 F.2d 342, 353 (5th Cir. 1968). "[I]t cannot be seriously disputed that [the fraud-based CROA statutory sections relied upon by Plaintiff in seeking to assert her claims] fall within the scope of Rule 9(b)." *Slack v. Fair Isaac Corp.*, 390 F. Supp. 2d 906, 911 (N.D. Cal. 2005); *see also Browning v. Yahoo! Inc.!*, No. C04-01463HRL, 2004 WL 2496183 (N.D. Cal. Nov. 4, 2004); *Millett v. Equifax Info. Services, LLC*, 1:05-CV-2122-BBM, 2006 WL 8432555, at *2 (N.D. Ga. Mar. 27, 2006); *Sancho v. Davidson*, 3:05-CV-883 (RNC), 2006 WL 8448126, at *1 (D. Conn. Mar. 3, 2006). This is so where, as here, such fraud-based CROA claims "rely almost exclusively on defendant['s] allegedly 'misleading and deceptive conduct[, which] conduct 'sounds in fraud' even if it would not necessarily give rise to a cause of action for deceit at common law." *Slack*, 390 F. Supp. 2d at 911-912. And because the fraud-based TCSOA and TCDMSA claims Plaintiff seeks to assert against Credit Pros substantially track the language contained in the fraud-based CROA claims Plaintiff seeks to assert against Credit Pros,[2] such fraud-based TCSOA and TCDMSA claims must also fall within the scope of Rule 9(b).

Here, the Complaint's limited and conclusory allegations reveal Plaintiff seeks to rely upon purported guarantees and deception as to the nature of the credit repair services that Credit Pros

---

[2] Indeed, Plaintiff's allegations in support her fraud-based TCSOA claims mirror her allegations in support of her fraud based CROA claims. *See* Compl. ¶ 41 ("Defendant violated [Tex. Fin Code] §§ 393.304(1) & 393.305 in much the same way it violated [15 U.S.C. 1679(a)(3)-(4)].").

allegedly provided Plaintiff, as well as Credit Pros' purported representation that if Plaintiff "made $149 monthly payments to Defendant over a period of time, Defendant would be able show results such as improving her credit rating, and resolve outstanding debts negatively reporting" in asserting her fraud-based CROA, TCSOA, and TCDMA claims. Compl., ¶ 15. However, Plaintiff's reliance is misplaced because her Complaint noticeably fails to allege the circumstances constituting fraud with any particularity as required by Rule 9(b). Indeed, the Complaint fails to allege, *inter alia*:

1. the identity of the speaker, including said speaker's relationship to Credit Pros, *see* Compl., ¶¶13 ("After speaking with Defendant . . ."), 15 ("Specifically, Plaintiff was explicitly informed. . . "),16 ("Moreover, Defendant also promised . . ."), 23 ("Defendant repeatedly suggested . . ."), and 30 ("Defendant represented . . .");

2. when the statements were made, *see* Compl., ¶¶ 8 ("Prior to the events giving rise to this action . . ."), and 11 ("Plaintiff subsequently happened upon Defendant.");

3. where the statements were made, *see* Compl., ¶11 ("Plaintiff subsequently happened upon Defendant.");

4. how the statements were made, *see* Compl., ¶¶ 13 ("After speaking with Defendant . . ."), 15 ("Specifically, Plaintiff was explicitly informed. . . "),16 ("Moreover, Defendant also promised . . ."), 23 ("Defendant repeatedly suggested . . ."), and 30 ("Defendant represented . . .");

5. how the statements were false, *see* Compl., ¶ 46 ("Upon information and belief, it is Defendant's business model to underinflate the amount and number of payments consumers must make to complete its program in order to get consumer's feet in the door . . .");

6. the intent of the speaker when making the statements, *see, generally,* Compl.; and

7. the complete content and context of the statements, *see, generally,* Compl.

These are vital and necessary allegations that Plaintiff must assert as required by Rule 9's heightened pleading standard that serves "to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Sancho v. Davidson*, 3:05-CV-883 (RNC), 2006 WL 8448126, at *1 (D. Conn. Mar. 3, 2006) (quoting

*O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 767 (2d Cir. 1991)); *see also Steves & Sons, Inc. v. Trinity Glass Intern., Inc.*, CIV.A. SA06CV357XR, 2007 WL 1556743, at *3 (W.D. Tex. May 25, 2007).

At its core, the Complaint simply alleges someone(s) made some representation(s) at some time(s) from some location(s) in some medium(s) that "Defendant would be able to show results such as improving her credit rating, and resolve outstanding debts negatively reporting . . ." but Credit Pros "was unable to alleviate Plaintiff's concerns and failed to improve Plaintiff's credit rating despite taking payment from Plaintiff." Compl., ¶¶ 15, 19. This does not come close to complying with Rule 9(b)'s heightened pleading standard. As a result, this Court should enter an Order dismissing the fraud-based claims Plaintiff attempts to assert in her Complaint.

## CONCLUSION

Plaintiff's fraud based CROA, TCSOA, and TCDMSA claims (Count I(a), Count II(a), and Count III(a) and (b)) recite the respective statutory language at issue but noticeably fail to allege any circumstances of fraud with particularity as required by Federal Rule of Civil Procedure 9(b). As a result, such claims should be dismissed.

**WHEREFORE**, Defendant, Credit Pros International Corporation, respectfully requests this Court enter an Order granting the instant Motion, dismissing Plaintiff's Complaint [Doc. No. 1], and granting any such further and other relief in favor of Credit Pros as this Court deems just and proper.

Dated: November **20**, 2023.   Respectfully submitted,

By: */s/ Julie M. Moeller*
JULIE M. MOELLER
Texas State Bar No.: 24073830
Email: julie.moeller@gmlaw.com
**GREENSPOON MARDER LLP**

700 Milam Street, Suite 1300
Houston, TX 77002
Tel: (212) 524-4966
Fax: (954) 771-9264

JAMEY R. CAMPELLONE
*Pro Hac Vice Anticipated*
Fla. Bar No. 119861
Email: jamey.campellone@gmlaw.com
Email: gabby.mangar@gmlaw.com
**GREENSPOON MARDER LLP**
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Tel: (954) 527-6296
Fax: (954) 333-4027

*Attorneys for Credit Pros International Corporation*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this **20th** day of November 2023, a copy of the foregoing Defendant's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

By: */s/ Julie M. Moeller*
     JULIE M. MOELLER